The Illinois Republic Court of Appeals Division is now in session and Honorable Justice Franklin W. Mitchell is in silence. Hey, good morning folks, please be seated. And our first case this morning is Starr v. Presence Central. And here's how we'll proceed. We'll allow 20 minutes aside with 5 minutes above. And so with that, we'll begin with Counsel for the Appellant. Thank you. And if you could just remind us of your name when you step up. Your Honor, my name is Tom Borton, B-O-R-T-O-N. And I represent the Appellant, Presence Central & Suburban Hospital Networks, DBA, Amita St. Joseph Medical Center. May it please the Court. Counsel. I think you can start. No worries. Thank you. As I indicated, my name is Tom Borton. I represent Presence Central & Suburban Hospital Networks, DBA, Amita St. Joseph Medical Center. As well as Nurse Deborah Juhant and Nurse Larissa Scheidez in connection with this matter. We're asking the Court to reverse the trial court's decision denying defendants' motion to transfer the case to Will County pursuant to the Doctrine of Form Nonconvenience. Specifically, we believe the evidence before the trial court demonstrates the private and public interest factors strongly favor transfer and that trial court abuses discretion in denying the motion. Could I just ask you, just to back up about abuse of discretion here, just so I understand. Sure. You're not suggesting that the trial court in any way abused her discretion by misapplying the law. That is to say, she had the correct legal, right? I think she does have the correct legal. I do. And so this isn't a case where the trial judge failed to exercise discretion, purely. That is to say, the trial judge shouldn't say, well, I always defer to the plaintiff's trust, or I never defer to this. So there's no always or never. So there was an exercise of discretion in the application of the correct legal standard. So all we're quibbling about is how she weighed the factors. And on an abuse of discretion standard, we only reverse that sort of an abuse of discretion if no reasonable person could ever reach that conclusion, right? Understood. Yes, that's the standard. I understand it's a difficult standard, but by the same token, when I look at the weighing of these factors, we can cite the case law and we can say these are the factors of FNC, but what happened in this particular case was some of the weighing of the factors was so skewed by some of the things that were considered, and also with respect to some of the things that were not considered, we believe that they strongly favored transfer. What do you say was not considered? What was not considered specifically were the affidavits of the nurses and as well as Dr. Wu. I understand Dr. Wu was a respondent in discovery during most of this case and before we filed our motions. He was converted to a dependent later on, but on our motion to reconsider, we filed an affidavit of Dr. Wu indicating that it would be inconvenient for him as a physician who lives in Will County, who works in Will County at St. Joseph Medical Center, to travel to Cook County for trial. The distance between the courthouse in Will County and the Daly Center is 46 miles. Correct. Okay. And Your Honor is right to point out this distance, but you have noted in First District cases that 40 miles, 30 miles, even in the case cited by the trial court, they said, look, the accident happened one mile across the border, but that distance is not something to be negated. It is still a factor that favors transfer. So the trial judge concluded that the factors, one way, slightly favored Will County, right? Just didn't strongly favor Will County. Correct. Okay. So one formulation of discretion, an exercise of discretion, is two different judges weighing the exact same factors can reach opposite conclusions and both be affirmed. So what here, what makes the difference here? Absolutely. What makes the difference here is this first element convenience of the parties. And we have present central and suburban hospital networks does not conduct any business in Cook County. We have a registered agent here. That's our connection. And that was a problem, right? But for that, would they even have an argument to be in Cook County? They have, not for presence, not for presence anyway. DuPage has been added later down the line. I mean, after all these motions were heard. And DuPage has a motion pending to dismiss because they said they were added so late relative to the statute of limitations. But your Honor's cutting right to the chase, which is convenience of the parties. And that's the biggest factor in our argument. This is a Will County case. This is a Will County hospital providing medical care and treatment in Will County through physicians who work in Will County. Dr. Wu resides in Will County. Our nurses reside there. I've been sued as a hospital not only for shyness in the other nurse, but for Wu's conduct, but for Singh's conduct, and the other unidentified employees, agents of the hospital is what the allegations are against us. We've attached an affidavit of the president of the hospital indicating, look, we've gone through these records, and there are numerous, numerous employees who were involved in this patient's care between February 21 and February 26. They could all be witnesses. Ultimately, we could have a relation back claim that we're responsible for their conduct, and they did something negligent in connection with this case. It certainly left the door open there. But we have numerous nurses, respiratory therapists who treated this patient during this time. Okay, but then there's this other side of it. You sent him, I believe it was not you personally, but your client sent him to the University of Chicago where he got lots of treatment that's also going to be relevant to his case, and they're going to have all those fancy, expensive witnesses, and they all live in Cook County. But going back to Justice Mitchell's point, how do we get to a hard to have been strongly favored rather than slightly favored where we're talking about a less than 50-mile distance? How do we get there? Because the first district and other cases in Illinois have noted that even if it's an adjacent county, that's a difference. You can't start looking about how far away it is. Well, we're doing it in terms of strength, maybe not in terms of ignoring the factor or ignoring it, but to say where does it go? Because the restaurants are better in Chicago, where's my company? I want to go back to before we interrupted you. You were starting to say that the affidavits, the judge did not consider the affidavits. That was at the heart of what was in the error, right? It is. And what we do in the medical profession in terms of FNC, it's Atadero is our guidance. That case is our guidance because Atadero tells us, look, when you are suing medical care providers in another county, the court needs to take into consideration the fact that you're going to be disrupting care, call schedules, the ability to see patients while these cases are tried. Those are all disrupted. But it will surely, I mean, I think that there's discussion that whether they're here at the Daly Center or at the Will County Courthouse, that treatment's going to be disrupted, right? There's disruption no matter what. There's more disruption if we're coming to Cook County and we're pulling people up here. We're pulling nurses to spend days up here in Cook County. They can't get back. Physicians, as Dr. Wu's affidavit indicates, he could still see patients. He could go in and see people, treat people in his practice if the case is held in Will County. There's no doubt that there's disruption everywhere when you have to take off your time. But if you have to take off your time and travel, that's what these affidavits get to. That was a very key point in Otterdaro and a point that's here. That got no consideration from the trial court, and that was a big issue that we had with this. She was talking about, look, there's really no affidavit to tell me that it's less convenient here. She weighed the analysis of convenience of the parties. I could just find my notes on that. And she said it disfavors transfer. Disfavors transfer. All the occurrence witnesses, all the people accused of medical malpractice or negligence are in Will County. How can that convenience disfavor transfer? I understand the concept that there are subsequent treaters in Chicago. You're going to see that in every case, right? What's significant to the trial court? There's a number. I get the concept. But as the court has noted in other opinions, these subsequent treaters almost always testify by virtue of evidence depositions. They're not called live witnesses at trial. And that was in the Schuster case. But the court noted that. What is the status of the litigation since this court granted the invite for appeal? Has the case been stayed? That's a great question. Because DuPage Medical Group has filed a motion to stay. The trial court had a case management conference recently and said we're going to be doing depositions. We're going to be proceeding. DuPage Medical said no, this case is stayed pursuant to the rules, Supreme Court rules. So, no, it's basically by agreement of parties has been stayed, which was the understanding that it would be stayed. We certainly didn't agree to stay. No. It was whether it would automatically be stayed by virtue of the rule that since this case is up on appeal, 306-A-6, whether it's stayed. That's the provision. It's in A-6 that while it's on appeal, it will be stayed. I've had other cases where we have agreed amongst the parties to go ahead and continue, and I did that in a Kearns case before this court one time before they reversed and sent a case back down to Champaign. But if not all parties are agreeing to do this, it becomes very difficult. Right. Well, the reason why I ask is granting these invite for appeals is very disruptive to cases. One of the factors that you suggested is that the docket in Will County moves faster or is less congested? Less congested, I think is the word. Not moves faster, but less congested. Yeah, it does not move faster because the mortgage in the county is second only to Lake County State in terms of bringing cases to birth. Mortgage. We're moving at jet speed now. And to be honest with you, I mean, I have cases in Cook, right? I'm litigating in Cook. We don't have enough judges to try our cases. It's difficult. Your volume is enormous. It is enormous. Defendants always complain that the case is moving at light speed, and the plaintiffs are complaining the case is languishing. I don't have complaints from plaintiff's counsels right now. I had one plaintiff's counsel tell me he has 10 cases set for trial in a six-month period of time. They're doubled up. It's difficult, but I could talk all day about that. But, yeah, I think you hit the nail on the head. I understand that, you know, what is it about this case that is so striking? The thing to me that is so striking is this is a Will County controversy. It's a controversy between plaintiffs who reside in Will County, the medical care and treatment that we've received in Will County, the defendants in Will County, all those issues. And we got caught on this red herring, I thought, when we started getting into this Amita issue. Right? You're Amita St. Joseph. Hey, Amita does stuff up here in Cook. It's got an interest. We're Crescent Central and Suburban Hospitals. I think the trial court said even though I think the trial court may have gotten it wrong, I think the trial court said it didn't matter. That's not what the ruling is based on. It really didn't feel like it when it said the analysis of convenience of the parties disfavors transfer to Will County in this circumstance. I can't find a case that would be more analogous to this belongs in Will County. This is a local Will County resident. The public interest factors of a jury in Will County versus a jury in Cook County, it's a local controversy. I don't see how you get out of weighing that as heavily favoring transfer in this particular case. I can go through the items with you. I mean, that's really what I've prepared to do. But when she indicated convenience of the parties disfavors transfer as neither Will or Cook is more or less convenient for the parties, I mean, this court has made an emphasis in these malpractice cases of noting that the occurrence witnesses, the people who are alleged to have been involved in the medical negligence are the key witnesses who are going to be appearing at trial. And we've provided supporting affidavits that these people work and reside in Will County with a couple of exceptions. We have one person, a nurse who's in Grundy County where she lives. Didn't the circuit court find that the occurrence witnesses was strongly favored transfer? She did, occurrence witnesses. But on the whole, some of these topics were, and they overlap. But one of the topics, convenience of the parties, is the favoring. She did it a little this way. Reasonable minds can differ. I don't see that as reasonable minds can differ. I've got a Will County controversy. I've been watching these cases up here from the time it was present Central and Suburban, DBA, present St. Joseph Medical Center to now. And I'm looking at this and I'm like, how could I be more Will County with what happened here? I get there's subsequent treaters. We do have a lot of subsequent treaters. I get that. They're usually taken by evidence deposition. Family members get less weight. It's these occurrence witnesses of where the alleged malpractice took place that really drives it. You're really, it sounds to me like what you're really arguing is that you misweigh the public interest factors because this is a Will County controversy. Will County's the one that should care about it. Will County's the one that should be burdened by it. She did find those favor transfer, but you're saying she needed to have found that they strongly favor transfer. Correct. Correct. I'm not saying just the public. I skipped the public because we got so caught up in what was in Will County. And I'm saying, look, it's a Will County controversy. These people are all from Will County. And that relates to the public interest factors as well. And I think they strongly favor. If there's any particular item you want me to go through, otherwise I'll go through these particular issues. The affidavits that we submitted show that this is inconvenient personally and professionally for these occurrence witnesses to litigate in Cook County, obtaining coverage. Will County's more convenient as the nurses could be in close proximity to patients and others needing care and information. We've got the affidavit of Christopher Schride, the president of St. Joseph Medical Center. The alleged negligence all occurred in Will County. Dr. Singh is on staff at St. Joseph Medical Center. Dr. Singh's actual answers to interrogatories indicates that he works in Will County. He resides in DuPage. He's closer to the Will County courthouse than he is to Cook County. And just to note, I mean, when we talk about miles, I can't get away from the concept of driving up here. Now, it's using my Google, and I was two miles away from my destination. It says it's going to take me 25 minutes. That's why if you're coming from Joliet, you get on the Rock Island. It's down the street every day. The Rockaway Boulevard exit. I get it. I get it. They're different ways. But the affidavits show that it would be inconvenient to litigate. Wu was a respondent discovery when all this happened, when all this went down. And we filed our FNC motion. So his affidavit now, which is part of the court record, indicates he still lives and works in Will County. He saw Mr. Starr as a patient in Will County. And that relates to the fact that he did see him at a different hospital in Cook County for the very first procedure. This was the colostomy takedown and the secondary anastomosis. He indicated it's inconvenient for him to litigate in Cook County as opposed to Will. And litigating in Cook would disrupt his personal and professional life. Litigating in Cook would inhibit his ability to attend to patient emergencies and to take call. I do know he's a trauma surgeon there. Defendant's affidavits are uncontradicted. I mean, there's nothing suggesting that what we say in these affidavits isn't right. The question, I guess, is, is it enough? Is it strong enough? And that seems to be the issue. We've been here before. It's been strong enough before. And I'm trying to find out the difference of why it's not strong enough now. Justice Mitchell suggested to you that one trial judge might find it strong enough and another trial judge might not. And they might both be right in the sense that neither of them would have abused their discretion. So you have a double hurdle to overcome. You have to overcome the plaintiff's choice, which there's some deference. We agree limited deference. And then you have to, for us, overcome the trial court. And, you know, overcome the fact that we do not want to, nor are we told to, make these decisions in the first instance. We have to only make them if there's a real abuse of discretion below. I understand. I mean, with respect to the deference to plaintiff's choice of forum, we all know that the plaintiffs don't reside in the chosen forum. Right. We know that that's what's going to happen. That may have occurred there. There is only one situation under the law that would get even less deference is if they had filed originally in Will County, non-suited, and refiled here. That's the only scenario that has less deference. I disagree with that. What's that? in Cook County were ones that he had chosen, but he did not pull up and go get a Cook County doctor so I can file in Cook County. You shipped him to Cook County. That's why he was in Cook County for 30 days. Understood. You were not thinking about where this case was going to be litigated, I'm quite sure, nor was he. No, I'm sure that doesn't play in the role of the decision-making process of anybody in here as to where he's going to receive treatment. But we have multiple cases, even cases as far down as Champaign, Illinois, where we're sending patients up to Cook County. I mean, it's just part of the modern era. I mean, I know we're dealing with this, and we're probably dealing with old FNC standards as it relates to things like medical records and things. You know, they're electronic, and we're trying to adjust, and we're trying to deal with this new scenario that we find that we are falling into. But this still is a Will County controversy. It is, and it's always going to be a Will County controversy. The fact that these treaters are in Cook, this Court has already recognized another case law. They aren't coming to trial. They're not going to be present at trial testifying. They're testifying by way of evidence definitions. I don't think we can conclude that on this record. I'm sorry. I didn't see evidence of that, nor am I willing to take judicial notice that these doctors would always appear. I don't know the facts of this case. It's the Schuster case. The First District in the Schuster case is the one that pointed that out to us, that these subsequent treaters are going to appear by way of evidence depositions. That's where we get it. Maybe true in the Schuster case. I don't look at it. It's not me making it up. It's not a legal conversation. I didn't come up with this on my own to make it up. I understand, but I'm just saying it's not a legal question. It's a factual question. I understand. I understand. But I try to think of the examples of, okay, so we have a critical ill patient down in Champaign, Illinois, where I'm from, at Carl Foundation Hospital. We ship them up to Chicago because they're in need of really emergent care, and they spend weeks up here rehabbing and doing other things. It happens. It is. I don't think that means the gravity of every case from Champaign that gets shipped up to Cook is going to make a difference. And I know Your Honors pointed out to me, hey, you're not in Champaign. You're in Joliet. I get there's a difference of what the travel is, but the cases in the First District and also the cases coming out of Madison and St. Clair County have said, look, 30 miles means something. 40 miles means something. It's not nothing. And we think that those factors waver in favor of transfer. Here, what's also very interesting to me is present central and suburban hospital network is sued for vicarious liability of other individuals. So any contacts we've had in Cook County are really irrelevant to this particular case. And if you look at the Schuster case and also the case that plaintiffs cited, the additional authority, Gregory v. Forest City Rehab, they're very supportive of this concept, which is, look, we have to look at not whether they actually do some business here in Cook County. We have to look at the nature of those contacts. In those cases, what you had was doing business in Cook County, and they were alleging mismanagement of nursing homes in that Gregory case. And they said that management took place here in Cook County. I'm present central in suburban hospitals. I've got suburban hospitals out here. I'm Kane. I'm Kankakee. I'm Will. That is the defendant involved in this case, not the Ascension Amita stuff, which was kind of just the smoke that got thrown out there and I think maybe led down a path that the trial court maybe abused its discretion. If it relied on that, which it appears that it did, DuPage has the same argument. DuPage is just sued for the apparent agency or agency of Wu. I'm not sure they're even going to be in this case. Who knows that? But it's the nature of those contacts. The fact that you're doing business here in Cook or you have some relationship in Cook doesn't mean, oh, you're here, you're here. Those are really venue issues, not forum nonconvenience issues, and the courts have made that clear. The ease of access to testimonial or other evidence, I keep bringing up the same factors. I've got my nine nurses down there. I've got all these things. But a lot of these factors apply within the same type of proof. Dr. Wu's there. Dr. Singh works there. Potential other yet unidentified employees or agents treated. Just to clarify, because this whole Amita presence, Amita, the only thing I saw the court say about that, the trial court, is that registration of merely conducting business in a county does not have a favor influence of forum nonconvenience to consider. I mean, it just seemed to say that they didn't think it mattered. Now, yes, they viewed your corporate defendant as part of Amita, and Amita does business in Cook County, but they said, we don't care. That's not part of the forum nonconvenience analysis. And I'm looking at page nine of the trial court decision. So if there's somewhere where they did heavily rely on that and they were wrong, I'm not going to – I mean, I don't know if we need to figure out if they were wrong, but if we don't need to figure out if they were wrong. Here's what I was looking at. Given Amita and DMG Dooley's widespread presence, this court imagines neither county is more or less convenient than the other without a supporting affidavit. It's on page five. Okay. That's the thing that got me jumping out of my seat. Okay. Right? Now I understand. Okay. She's relying on this, and it's just something off of a website. It's inaccurate. In terms of the convenience for the corporate defendant, whatever that is, because you're not going to bring the corporation to court. I'm not bringing the hospital either, but I've got a whole lot of people behind that hospital who are working out there. Well, I think we're getting down to your final minute here. I apologize for going off, but, you know, when we weigh these factors and I look through here, I really believe this is a Will County case. It is a Will County incident. Will County parties. Will County major witnesses, defendants, all located there. Will County has a huge interest in litigating this case. This has minimal connection to Cook other than the subsequent treaters, which your honors have recognized and put into issue. Thank you very much. Thank you. Okay. We'll hear from your friend on the other side. Whenever you're ready. Good morning. May it please the court, counsel. My name is Bridget Dignan, and I represent Mr. and Mrs. Starr in this matter, the Eppolese. And I want to touch upon first something that you had mentioned, Justice Mikva, regarding the adjacent counties. So, you're correct. My client was on life support. Every single minute counted. And at that time, it wasn't too far for President's Hospital to send my client over to Cook County Hospital. Why? Because it's close. Okay? And so, you were right, Justice Mitchell, to jump on the rock island. This is an archaic argument that, you know, came with the beginnings of foreign nonconvenience when our roads weren't what they are today. Justice Navarro, I wanted to talk to you about or talk to all of you about your comment regarding the affidavits. So, just to be clear, the affidavits that were submitted to the trial court are the two nurses and Christopher Schride. Christopher Schride is the president for Ascension St. Joseph, formerly President Central and Suburban Hospital Network doing business as a META. So, I just wanted to clarify that, number one. Number two, the court did consider the affidavits of the nurses. However, those affidavits contained conclusory statements that emphasized nothing more than the inconvenience of a trial. And that was stated by your Honor's room counsel was up here earlier. Can I ask you to keep your voice up just a little bit? That does not amplify you. And I'm losing my voice. Sorry, that doesn't help very much. Excuse me. And number three, with regards to Dr. Wu's affidavit, the court didn't consider it. And the reason why is because it was attached to the reply to the motion to reconsider. That's the first time that it entered the court, okay? It wasn't attached to the motion to transfer venue. Dr. Wu was converted from an RID, a respondent in discovery, to a defendant a few months during the process of discovery after the motion to transfer venue was filed. I didn't file, we didn't enter a briefing schedule until six, seven months thereafter. Counsel had plenty of opportunity to amend or withdraw and file a new motion adding Dr. Wu's affidavit, which it did not. Instead, I replied, or I responded, he replied. The court came down with its order. He filed a motion to reconsider. I responded. He replied. And it was at that time Dr. Wu's affidavit was attached. Therefore, I filed a motion to strike the reply and the affidavit as well. And that wasn't able to be considered by the court because it came on appeal. So I just wanted to make that clear with regards to the affidavit. In addition, there were only three out of seven, there's seven defendants in this case. And there were three that were submitted, Christopher Shride and the two nurses. You know, and the court found correctly that forum was not inconvenient for all of the defendants. Because, you know, when you look at the cases that considered forum nonconvenience, it's always a joint motion to transfer. That wasn't the case here. It was only the hospital and the nurses that filed this motion, never joined by the anesthesiology defendants or by Dr. Wu and his group, which were converted into a defendant well before we entered into a briefing schedule for that particular motion. Next, I wanted to touch upon your comment, Justice Mitchell, with regards to the abuse of discretion here. It is the most deferential standard, as you know. And in this case, first the court correctly decided that plaintiffs had some deference, albeit less. And that was noted in the beginning of the order. And by the way, this is an 11-page, single-spaced order that balanced each and every of the private and public factors in this case. In order to find that the judge abused her discretion within that 11-page, single-spaced order, the courts have said that this, you know, reasonable minds can differ, right? And that's okay in this case. But we have to show here, counsel has to show that the trial court acted arbitrarily without employing conscientious judgment, exceeded the bounds of reason, and ignored principles of law. And that's just not the case here. Like I mentioned, she first applied the appropriate level of deference to the plaintiffs. Next, in balancing the public and the private factors, she considered all relevant factors as provided to her in the motions, in the exhibits, and in the discovery. And she didn't weigh the private interest factors against the public interest factors. And she didn't emphasize just one factor. Instead, she evaluated the totality of the circumstances. And as the L.A. v. State Final Court has said, where the record shows that the trial court was aware of the balancing test, its careful application of the correct test is itself considered in giving force to the standard of review. Excuse me. So in sum, you know, we're here determining whether the defendants met their burden. It's a considerable burden. Can I ask you if you're familiar with, and I'm sure you are, the case, the recent case by Justice Navarro, written by Justice Navarro, Montecudo? Are you familiar with that case? I am. Can you distinguish it? Yes. So in that case, the defendants filed the joint motion. And so it was there where they were showing that it was inconvenient for all of the defendants. So all of the defendants joined in. All of the defendants joined in. They're the plaintiffs that lived in Boone County. The negligence was in Boone County. The defendants were in an adjacent or contiguous county of Winnebago. So the counties were farther apart? The two counties, Boone County and Winnebago County, were adjacent counties. And it was Cook County where the case was filed. Which is farther from Boone? Much farther. There were no witnesses in Cook. The decedent there was transferred from Boone to Winnebago County, right? To the adjacent county of Winnebago. The registered agents were in Cook? The registered agents were in Cook County. And that was all they had. That was their contact information. Yes. And that's true here. I mean, were it not for the registered agents here, you wouldn't even have an argument for a venue here. Right. That's for purposes of venue. Right. I understand. Not for the forum. Right. And with regards to, you know, when we're talking about this particular case, and where the bulk of the treatment, the subsequent medical treatment, occurred, it's here in Cook County. My client had no choice, like you had mentioned earlier. My client was emergently transferred to U of C where he remained in a bed. By the way, this was within a month before the COVID-19 pandemic was declared. So my client was in an ICU bed at U of C for a month. Because that's where he was transferred by this defendant. To say that the Cook County residents don't have a say in what happens with residents that are transferred to their Cook County hospitals, I think is ignoring the fact that, you know, counsel had mentioned that there are multiple hospitals that do that. Well, we should have a say in the outcome of litigation involving such actions. So, you know, in this case, again, it's an adjacent county. Whereas in the Montecito case, if I pronounced that correctly, the adjacent counties were actually Winnebago and Boone and not, in fact, Cook County. And that was, again, in that case, it was a joint motion. In this case, it was only three out of the seven defendants that had commented on a level of inconvenience for this particular case proceeding in Cook County. So, you know, I don't want to repeat any of what has been said. But, again, this is an abuse of discretion standard. Reasonable minds can differ. This court entered an 11-page single-spaced order where it properly weighed the private and public factors and, therefore, should be affirmed by this court. Thank you. Mr. Gordon, whenever you're ready. Thank you, Your Honors. And I think when we look at this trial court's opinion and they say, and given Amita and DMG Dooley's widespread presence, the court imagines neither county is more or less convenient than the other without supporting affidavit, that's a problem. And the court has not followed the law with respect to business contacts in Cook County. It hasn't followed Schuster. It hasn't followed the case that counsel cited as additional authority. It says those business contacts in Cook County have to be shown as the essence of what the case is about. Those cases involve mismanagement from an entity that was in Cook County managing a facility outside of Cook County. This case has tangential relationship to Cook. And I just want to read. We've talked a lot about that. I'm still stuck, and I meant to be the dead horse, but in the interest of transparency, this is the issue that I have. It's that this concept of discretion, what we're doing for abuse of discretion, it doesn't guarantee you an outcome. It guarantees you a process. So long as the trial judge reasonably exercised discretion, we're really not supposed to second-guess how we would weigh it a little bit differently, right? I get that. I get the concept. But I've seen so many of these cases transfer. I've been reading all these transfer cases until my eyes are just bloodshot, right? And they all say the same things. Little variations. This is forum shopping. We don't encourage forum shopping. It's less deference. It's not zero. It's significantly less. I mean, you can get little variations of all this. I get the concept. But when she's telling me she's considering this and that makes this less convenient, that jumps to me to say, look, you have misweighed things. And the convenience of the parties is overwhelmingly favoring Will County. And we think that adjusts also to the public interest factors in terms of weighing the counties. And, Your Honors, it rightly approached me with these questions about, hey, you're just 46 miles away. I'm going to read to you out of Kuhn v. Nickel. It says, while we recognize that St. Clair County is adjacent to Clinton County, the Supreme Court has rejected the contention that a trial in an adjacent county is unquestionably convenient for defendants. And I would submit to the Court that you – Unquestionably? Is that the word? Yes. Rejected that it's unquestionably? That's the quote. Okay. That it's unquestionably convenient. The difficulty I have in these scenarios is it doesn't apply so much to doctors. It applies to hospitals. And I'm very in tune to the fact when you pull a hospital and you have them litigate in a form that is not a county where they reside, it is incredibly difficult for them. Getting nurses scheduled up to Cook County, getting people here, getting people staying overnight, the cancellations that happen. Oh, I thought I needed you today. I need you tomorrow. To do that from Willowbrook Cook is difficult. That scheduling – every lawyer is going to have that scheduling issue, right? It is. The case is only going to take two weeks. Correct. But it's cost. It's cost. And that's what the Court has told us. Look, you can't look at whether the cost is minimal or not. It's nothing to me. It's not from Willowbrook County to Cook County, which is three hours. It's one hour. We're in dangerous territory. I would suggest to you that when we had an accident one mile across the border in Kane County and Cook and the defendant, the corporate defendant, has a facility that is actually on the border in Kane County and Cook, that's the essence of they transferred that case to Kane County. I have a silly question that you may not know the answer to. But why do they have a registered agent in Cook? If they didn't have a registered agent in Cook, this wouldn't happen. Everybody has a registered agent in Cook. They just need to have one. People do it. You've got to have one. It's easier. It's convenient. And I think Cook likes the fact that we have our registered agent here. I think that's a beneficial thing for them. But, yeah, I mean, we could get it out of Cook and not give you. You wouldn't be creating Bennu and Cook if you didn't have a registered agent. Yeah. Depending on rulings, we may find a way out of the scenario. Tell you practically. Come after us. But I appreciate your honors. I appreciate the questions. I appreciate the opportunity to present. I appreciate the fact that you accommodated counsel's schedule in allowing us to do this argument today. We just believe that the analysis is flawed, that it strongly favors transfer in this scenario. It is a local Will County controversy. It should be decided by a Will County jury. And the expense associated with that, based off of our affidavits and those issues, dictate transfer. Thank you, your honors. Thank you. Okay. Thank you to counsel for excellent arguments on both sides and excellent briefing. Matt will be taking re-requisement for study and written disposition. And with that, we're going to take a brief break, and we'll be back. Be quiet for about 15 minutes.